UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAVANO MUNNINGS,

Plaintiff,

-vs-                                                    Case No.  6:07-cv-282-Orl-19KRS

FEDEX GROUND PACKAGE SYSTEMS,
INC.,

Defendant.
_____

# ORDER

This case comes before the Court on the following:

1.    Motion to Stay All Proceedings, or in the Alternative, for a Continuance of the Trial
      Date Pending Decision by the U.S. Supreme Court in *CBOCS West, Inc. v.
      Humphries*, with Incorporated Memorandum of Law by Defendant (Doc. No. 67,
      filed Mar. 27, 2008);

2.    Rule 12(h) Suggestion that the Court Lacks Jurisdiction over the Subject Matter, and
      Motion to Stay This Case Pending Determination by the Court of Its Jurisdiction,
      with Incorporated Memorandum of Law by Defendant (Doc. No. 72, filed Mar. 28,
      2008);

3.    Response in Opposition to "Defendant's Motion to Stay All Proceedings, or in the
      Alternative, for a Continuance of the Trial Date Pending Decision by the U.S.
      Supreme Court in *CBOCS West, Inc. v. Humphries*" by Plaintiff (Doc. No. 75, filed
      Mar. 31, 2008);

4.      Response in Opposition to "Defendant's Rule 12(h) Suggestion That the Court Lacks Jurisdiction over the Subject Matter, and Motion to Stay Pending Determination by the Court of Its Jurisdiction" by Plaintiff (Doc. No. 76, filed Mar. 31, 2008);

5.      Verified Notice of Filing Pick-Up and Delivery Contractor Operating Agreement and Addenda in Compliance with April 1, 2008 Court Order by Defendant (Doc. No. 78, filed Apr. 4, 2008); and

6.      Notice of Filing FedEx Ground Package System, Inc.'s Pick-Up and Delivery Contractor Operating Agreement with Addenda and Attachments to Addenda by Plaintiff (Doc. No. 79, filed Apr. 4, 2008).

**Background**

Plaintiff Javano Munnings is an independent contractor with Defendant FedEx Ground Package Systems, Inc. (Doc. No. 78-2 at pp. 2-34, filed Apr. 4, 2008; Doc. No. 79-2, filed Apr. 4, 2008.) The two parties entered into a Pick-Up and Delivery Contractor Operator Agreement on July 27, 2005, in which Plaintiff agreed to provide delivery services for Defendant. (Doc. No. 78-2 at pp. 2-34; Doc. No. 79-2.) Plaintiff alleges that two of Defendant's employees, Troy Hinds and Russell Dezelan, racially discriminated against Plaintiff by "deliberately sabotag[ing] the scheduling, routing, loading, and other aspects of delivery of packages to Mr. Munnings and his drivers to make the deliveries by Mr. Munnings and his drivers more difficult and stressful, and to induce Mr. Munnings to breach his contract by misdelivering packages." (Doc. No. 2 at p. 2, ¶ 13, filed Feb. 27, 2007.) Further, Plaintiff claims that these actions escalated when Plaintiff complained of the unlawful racial discrimination to Defendant's Office of Contractor Relations. (*Id.* at p. 4, ¶ 31.)

Plaintiff brings this action against Defendant alleging: (1) discriminatory impairment with Plaintiff's rights to make and enforce contracts in violation of 42 U.S.C. § 1981 (2006); (2) retaliation for complaining about discrimination in violation of 42 U.S.C. § 1981; and (3) breach of the implied covenants of good faith and fair dealing.  (Doc. No. 2.)[1]  Defendant denies all of Plaintiff's claims.  (Doc. No. 13, filed Mar. 20, 2007.)  Defendant also moves the Court to stay all proceedings and has filed a Suggestion that the Court lacks subject matter jurisdiction over this case. (Doc. No. 67, filed Mar. 27, 2008; Doc. No. 72, filed Mar. 28, 2008.)  Plaintiff opposes both the Motion to stay and the Suggestion of lack of jurisdiction.  (Doc. No. 75, filed Mar. 31, 2008; Doc. No. 76, filed Mar. 31, 2008.)

## Analysis

### I.    Suggestion That the Court Lacks Subject Matter Jurisdiction

A federal court has the power to hear only those cases over which it has been granted subject matter jurisdiction as enumerated in Article III, Section 2 of the United States Constitution.  Article III provides that the judicial power extends over "cases" and "controversies."  U.S. Const. Art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).  The United States Supreme Court has interpreted this language as requiring, among other things, that the parties bringing suit in federal court have standing to do so.  *Id.* at 560.  As the Supreme Court explained:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an "injury in fact"–an invasion of a legally protected interest which is (a) concrete and particularized . . . ; and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" . . . .  Second, there must be a causal connection between the injury

---

[1]    Plaintiff filed a Notice of Withdrawal of his claims of defamation and tortious interference with a prospective contractual relationship.  (Doc. No. 52, filed Jan. 21, 2008.)

and the conduct complained of–the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." . . .

*Id.* at 560-61 (internal citations and footnote omitted).  Furthermore, "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Id.* at 561.

In addition to the three constitutional standing requirements, the Supreme Court has also articulated three prudential standing requirements that define a case's "justiciability":

Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing.  Thus, this Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." . . .  In addition, even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating "abstract questions of wide public significance" which amount to "generalized grievances," pervasively shared and most appropriately addressed in the representative branches. . . . Finally, the Court has required that the plaintiff's complaint fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982) (internal citations and footnotes omitted).

In its Suggestion that the Court lacks subject matter jurisdiction, Defendant argues:

As noted, to have standing a plaintiff is generally required to assert his own legal rights or interests and not rest his claim on the legal rights or interests of another.  *Valley Forge Christian Coll.*, 454 U.S. at 474.  Because Plaintiff has no rights under the contract with FedEx, but instead those rights belong to Nava Industries, Plaintiff lacks standing to assert rights under the contract pursuant to 42 U.S.C. § 1981.  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006).

(Doc. No. 72 at p. 6.)  This argument is based on a prudential standing requirement which was arguably waived by Defendant when it was not raised prior to the dispositive motions deadline.[2] However, the Court need not reach the issue of waiver because Defendant's standing argument lacks merit on the facts.

Defendant relies on the Supreme Court's decision in *Domino's Pizza, Inc.* to support its position that Plaintiff lacks standing.  (*Id.*)  In that case, the Supreme Court considered "whether a plaintiff who lacks any rights under any existing contractual relationship with the defendant, and who has not been prevented from entering into such a contractual relationship, may bring suit under . . . 42 U.S.C. § 1981."  *Domino's Pizza, Inc.*, 546 U.S. at 472.  The plaintiff was the sole shareholder and president of a corporation that had entered into several construction contracts with Domino's. *Id.*  The plaintiff sued Domino's in his personal capacity for discriminatory impairment with his rights to make and enforce contracts.  *Id.* at pp. 472-73.  The district court dismissed the case for failure to state a claim, and the Ninth Circuit Court of Appeals reversed.  *Id.* at 474.  The Supreme Court in turn reversed the Ninth Circuit, holding "Any claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights."  *Id.* at 476.  Since the plaintiff had not identified any contractual rights he possessed in an individual capacity, the Court reasoned, the plaintiff could not individually bring a claim under Section 1981. *Id.*[3]

_____

[2]       Appellate courts addressing the issue are split over whether prudential standing requirements may be waived.  *See, e.g.*, *Pharm. Research & Mfrs. of Am.*, 249 F.3d 66, 73 n. 3 (1st Cir. 2001) (collecting cases).  The Eleventh Circuit has not yet decided the issue.  *See Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1358 (11th Cir. 2003).

[3]       The Supreme Court explained that its holding rested solely on the issue presented: whether an agent with no individual rights under a contract may bring suit in his (continued...)

To determine whether a party has standing to assert individual rights under a contract, the Eleventh Circuit Court of Appeals applies the law of the forum state. *E.g.*, *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005). This rule is equally applicable to Section 1981 cases. *E.g.*, *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 890 (11th Cir. 2007). Thus, the scope of the rule articulated by the Supreme Court in *Domino's Pizza* is defined by state law. *Id.* Accordingly, this Court will look to Florida law to determine whether Plaintiff has enforceable rights under the contract at issue.[4]

Under Florida law, an agent acting within the course and scope of his agency relationship with a disclosed principal is not a party to a contract between the principal and a third party, unless

---

[3](...continued)
personal capacity for interference with that contract in violation of Section 1981. *Domino's Pizza, Inc.*, 546 U.S. at 476-77. The Court further explained the significance of this limited holding:

> We say "under which the plaintiff has rights" rather than "to which the plaintiff is a party" because we do not mean to exclude the possibility that a third-party intended beneficiary of a contract may have rights under § 1981. . . . Neither do we mean to affirm that possibility. . . . The issue is not before us here, McDonald having made no such claim.

*Id.* at 476 n. 3. Thus, the Court left open the possibility that an intended third-party beneficiary to a contract could have rights under Section 1981. *See id.*

[4]      Both parties rely exclusively on Florida law to support their contractual arguments. (*See, e.g.*, Doc. No. 46 at pp. 21-23; Doc. No. 68 at p. 19.) Neither party mentions the choice of law provision in the Pick-Up and Delivery Contractor Operating Agreement calling for the application of Pennsylvania law. (Doc. No. 78-2 at p. 33; Doc. No. 79-2 at p. 32.) Since the Court has not been asked to enforce this provision, and both parties cite Florida law in their arguments, the Court will also apply Florida law. *See Marine Envtl. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003) ("However, in this case neither party has argued the applicability of Colorado law (either below or in their briefs) . . . . By contrast, both parties have relied heavily on Florida law as controlling. In this situation, the choice of law issue is deemed waived and the court is free to apply the law of the forum.").

otherwise agreed by the parties.  *E.g.*, *Philip Schwartz, Inc. v. Gold Coast Graphics, Inc.*, 623 So. 2d 819, 820 (Fla. 4th DCA 1993) (citing Restatement (Second) of Agency § 320 (1958)); Restatement (Third) of Agency § 6.01 (2006).  If the agent and third party agree that the agent is a party to the contract, however, the agreement controls.  *E.g.*, *Philip Schwartz, Inc.*, 623 So. 2d at 820; Restatement (Third) of Agency § 6.01.  Evidence that an agent is individually a party to the contract may include an agent's "a manifestation of assent to be bound personally" and "[t]he manner in which an agent's name appears in a contract."  Restatement (Third) of Agency § 6.01 cmt. b.

A party may also have rights under a contract as an intended third-party beneficiary.  The Florida Supreme Court has held, "[T]he rule in Florida now is that the third party beneficiary of a contract is the real party in interest and may prosecute an action on it in his own name as the real party in interest."  *Thompson v. Commercial Union Ins. Co. of N.Y.*, 250 So. 2d 259, 262 (Fla. 1971); *see also Bochese*, 405 F.3d at 981-83 (collecting cases); Fed. R. Civ. P. 17(a), (b) (describing the concepts of capacity to sue and the real party in interest).  In other words, "A party has a cause of action as a third-party beneficiary to a contract if the contracting parties express an intent primarily and directly to benefit that third party (or a class of persons to which that third party belongs)."  *Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 169 F.3d 677, 680 (11th Cir. 1999). "Essential to the right of a third party beneficiary of a contract to maintain an action for its breach is the clear intent and purpose of the contract to directly and substantially benefit the third party."  *Thompson*, 250 So. 2d at 262, *quoted in Bochese*, 405 F.3d at 982.

In the current case, the evidence supports Plaintiff's argument.  The Pick-Up and Delivery Contractor Operator Agreement was originally signed on July 27, 2005 by Plaintiff individually.

(Doc. No. 78-2 at p. 34; Doc. No. 79-2 at p. 33.)  Sometime in approximately August of 2005,

Plaintiff and Defendant signed a Signature Page Amendment, which stated:

> THIS AMENDMENT TO THE FEDEX GROUND PACKAGE SYSTEM, INC. PICK-UP AND DELIVERY/LINEHAUL CONTRACTOR OPERATING AGREEMENT ENTERED INTO ON 27 DAY OF JULY, 2005, (THE AGREEMENT) BY AND BETWEEN JAVANO MUNNINGS (CONTRACTOR) AND FEDEX GROUND PACKAGE SYSTEM, INC. NOW KNOWN AS (FEDEX, INC.) IS AMENDED AS A RESULT OF THE CHANGE OF CONTRACTOR'S IDENTITY FROM [Plaintiff's Social Security Number redacted], A SOLE PROPRIETOR, TO 651158995 AN INCORPORATED ENTITY EFFECTIVE AS OF 7/27, 2005 (AMENDED EFFECTIVE DATE).
>
> BY THE EXECUTION OF THIS SIGNATURE PAGE AMENDMENT TO THE AGREEMENT, FEDEX, INC. AND CONTRACTOR EACH AGREE THAT, EXCEPT FOR THE CHANGE OF CONTRACTOR'S IDENTITY MADE A PART HEREOF, THE AGREEMENT REMAINS IN FULL FORCE AND EFFECT, AND EACH PARTY AGREES TO CONTINUE TO BE LEGALLY BOUND BY THE TERMS OF THE AGREEMENT.

(Doc. No. 85-2 at p. 1.)  Under this text, there are two columns containing signatures of the parties.

In one column, Andrew Philipson, the "P & D Manager," signs for "FEDEX GROUND PACKAGE

SYSTEM, INC./LTD/FHD."   (*Id.*)   In the other column, Javano Munnings signs for

"CONTRACTOR/CORPORATION."  (*Id.*)  Below his signature, Plaintiff lists his social security

number and the tax identification number of Nava Industries, Inc.  (*Id.*)  He lists his title as "Vice

President" and signs the business name of "NAVA INDUSTRIES, INC."  (*Id.*)

This Signature Page Amendment is at most ambiguous as to whether Plaintiff individually

remained a party to the contract.  On the other hand, in the pleadings, both parties unambiguously

interpreted the contract as conferring rights on Plaintiff individually.  In his Verified Complaint,

Plaintiff alleged, "Since on or about July 22, 2005, *Mr. Munnings* contracts with FedEx for *Mr.

Munnings* to provide delivery service on one or more FedEx package delivery routes, which routes

are located entirely within Brevard County."  (Doc. No. 2 at p. 1, ¶ 5 (emphasis added).)  To this

allegation, Defendant responded in part, "FedEx Ground admits that it entered into a contract *with Plaintiff*, under which *Plaintiff* agreed to provide contractually specificied services in designated areas in Brevard County, Florida."  (Doc. No. 13 at p. 2, ¶ 5 (emphasis added).)  Plaintiff further claimed, "*Mr. Munnings* has contractual rights for FedEx, inter alia, to cooperate with Mr. Munnings in providing a standard of service that is fully competitive with that offered by other national participants in the industry; and to provide [a] sufficient volume of packages to Mr. Munnings to make full use of his equipment."  (Doc. No. 2 at p. 6, ¶ 51 (emphasis added).)  Defendant responded to this allegation, in part, "FedEx ground admits that *Plaintiff* was an independent contractor with FedEx Ground *and a party to* the Pick-Up and Delivery Contractor Operating Agreement with FedEx Ground, which speaks for itself."  (Doc. No. 13 at p. 6, ¶ 51 (emphasis added).)

Furthermore, Plaintiff has provided an Affidavit that explains the meaning of the Signature Page Amendment ("SPA").  (Doc. No. 76-2.)  In this Affidavit, Plaintiff stated under oath:

> 3.  At the time I signed the SPA, Andrew Phillipson (FXG's P&D Manager at the Cocoa terminal and the person whose name appears at the top of the SPA) said to me that the SPA was what I had to sign to have my name and Social Security number (SSN) not appear on the settlement statements.
>
> *  *  *
>
> 6.  "Settlement" is the department of FXG that issues settlement statements and payments to the contractors or to the designated payee of the contractor.
>
> 7.  When I first became a contractor with FXG, I was the payee identified on FXG settlement statements, and my name and Social Security number (SSN) would also be displayed on the settlement statements. . . .
>
> 8.  Soon after I contracted with FXG, I saw that the settlement statements were kept in plain view of anyone who walked into the FXG terminal office until I was able to retrieve and secure them.  I did not want settlement statements with my name and SSN floating around the FXG office, open to view by anyone who went into the FXG office.

9.   Mr. Phillipson told me that by changing the identity of the payee to Nava Industries, my SSN would no longer appear on the unsecured settlement statements.

* * *

11.   Mr. Phillipson told me that the SPA was only to substitute the name of the payee, and not my existing contractual obligations as the actual contractor in my personal capacity, which is what I understood the SPA to say and is what was intended by FXG and me at that time.

* * *

13.   Even after I signed the SPA to eliminate my name and SSN from the settlement statements, FXG retained my home address on the settlement statements, instead of using the business address of Nava Industries. . . .

(*Id.* at pp. 1-3.) Furthermore, Plaintiff's wife, the President of Nava Industries, provided an Affidavit in which she stated under oath: "Fedex (sic) Ground Packaging System (FXG)–through Terminal Manager Dezelan, P & D Manager Phillipson, Luke Anderson, and Mary Peterson–denied me access to meetings, documents, and other information regarding my husband's route, saying to me that Javano was the contractor, not Nava Industries." (Doc. No. 76-4 at p. 1, ¶ 4.) Finally, the addenda to the contract, many dated after August of 2005, were signed by Plaintiff as "Contractor" without reference to Nava Industries. (*E.g.*, Doc. No. 78-2 at pp. 74, 80; Doc. No. 78-3 at pp. 38, 79; Doc. No. 79-16 at p. 2; Doc. No. 79-32 at p. 3; Doc. No. 79-44 at p. 2.) This evidence shows that Plaintiff continued to have rights and obligations under the contract despite the Signature Page Amendment.

Defendant offers two pieces of evidence to support its argument: the Signature Page Amendment and a portion of Plaintiff's deposition transcript. (Doc. Nos. 72-2, 72-3.) In the provided deposition testimony, Plaintiff states that Nava Industries purchased the FedEx sales route from a company called Triple T. (Doc. No. 72-3 at pp. 43-44.) This evidence only apples to the sale

of the route and not the contract at issue.  (*See id.*)  Therefore, Defendant's evidence does not support

its claim that Plaintiff lacks rights under the contract.

In sum, the undisputed evidence shows that Plaintiff was, at a minimum, an intended third

party beneficiary to the contract, if not a party in his own right.  Defendant's attempts to reinterpret

the contract a little over a month before trial and well after the dispositive motions deadline are

highly suspect.  Defendant's argument that the Signature Page Amendment deprives the Court of its

subject matter jurisdiction is not well taken, as the Defendant bases its assertions on prudential,

rather than constitutional, standing requirements.  Further, Defendant's claim that this evidence was

newly discovered appears to be contradicted by the fact that the Signature Page Amendment bears

Defendant's own Bates number and was apparently produced during discovery.  (Doc. No. 76-3 at

pp. 1, 4.)  In any event, Defendant has failed to raise a meritorious argument.  Under Florida law,

Plaintiff has rights under the contract and therefore has standing to bring a Section 1981 claim

arising from this contract.

## II.      Motion to Stay All Proceedings or Continue Trial Date

Defendant also seeks a stay of the proceedings pending a decision by the United States

Supreme Court in *Humphries v. CBOCS West, Inc.*, 474 F.3d 387 (7th Cir. 2007), *cert. granted*, 70

U.S.L.W. 3598 (U.S. Sept. 25, 2007) (No. 06-1431).  (Doc. No. 67 at p. 1.)  In the alternative,

Defendant requests a three-month continuance of the trial date and extension of all remaining pre-

trial deadlines.  (*Id.*)  Plaintiff opposes Defendant's Motion, arguing that delay will not save

resources but will instead prejudice Plaintiff.  (Doc. No. 75.)

A court's power to stay proceedings is "incidental to the power inherent in every court to

control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Trial courts are afforded "broad discretion" in determining whether to stay a proceeding.  *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551-52 (11th Cir. 1986).  The Eleventh Circuit reviews a district court's decision whether to stay proceedings under an abuse of discretion standard.  *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982).

Additionally, Federal Rule of Civil Procedure 16 provides: "A [scheduling order] may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also* Local Rule 3.09(a).  In the Court's Case Management and Scheduling Order entered in this case, the Court stated: "Motions to extend the dispositive motions deadline or to continue the trial are generally denied.  *See* Local Rule 3.05(c)(2)(E). The Court will grant an exception only when necessary to prevent manifest injustice."  (Doc. No. 15 at p. 4.)

Defendant has not demonstrated the manifest injustice necessary to warrant a stay or a continuance in this case.  As Defendant recognized, the Eleventh Circuit has held that a plaintiff may proceed on a race retaliation claim under Section 1981.  (Doc. No. 67 at p. 3 (citing *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405 (11th Cir. 1998).)  While the Supreme Court has granted a writ of certiorari on a case addressing the issue, the Supreme Court has not yet issued its decision in *CBOCS West, Inc. v. Humphries*, No. 06-143, and there is no way to know when it will do so.  The trial for the case presently before this Court, however, is set for May.[5]

---

[5]    Further, Defendant could have raised this argument much earlier.  The Supreme Court granted the writ of certiorari in *CBOCS West, Inc.* on September 25, 2007.  Defendant's failure to raise this argument in a timely manner weighs against a finding of prejudice.

The law in the Eleventh Circuit is clear: race retaliation claims are cognizable under Section 1981. Since Plaintiff's retaliation claim is inherently intertwined with his discrimination claim, the Court does not find that Defendant will be unduly prejudiced by defending against both the retaliation and discrimination claims at trial, even if the Supreme Court ultimately decides race retaliation claims are not cognizable under Section 1981. Therefore, Defendant has not shown good cause for a delay or demonstrated that manifest injustice will result without a stay or continuance. Accordingly, Defendant's Motion is denied.

### Conclusion

Based on the foregoing, the Court **DENIES** Defendant's Motion to stay all proceedings (Doc. No. 67) and **DENIES** Defendant's Suggestion that the Court lacks subject matter jurisdiction (Doc. No. 72).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on April 11 , 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party